# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRIS CARTY,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:12cv00028 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **SGT. W. A. WRIGHT, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff, Chris Carty, an inmate incarcerated at Red Onion State Prison, ("ROSP"), in Pound, Virginia, filed this action pro se for monetary damages, as well as declaratory relief, under 42 U.S.C. § 1983 against Virginia Department of Corrections, ("VDOC"), officers Sgt. W. A. Wright and Lt. D. Tate. Jurisdiction over this matter is based upon 28 U.S.C. § 1331. The matter is before the undersigned on the Motion For Summary Judgment filed by the defendant Lt. Tate.[1] (Docket Item No. 29) ("Motion"). This case is before the undersigned magistrate judge on referral, pursuant to 28 U.S.C. § 636(b)(1)(B). The plaintiff has responded to the Motion, and none of the parties have requested a hearing on the Motion. Based upon the parties' briefs and the accompanying affidavits and exhibits, I recommend that the court grant the Motion only insofar as Carty sues Tate in his "official capacity." Otherwise, I recommend the court deny the Motion.

---

[1] To date, service has not be accepted by or served upon defendant Wright.

## I. Facts

In his sworn Complaint, (Docket Item No. 1) ("Complaint"), Carty alleged that, on September 21, 2011, he was escorted to the C-3 sally port at ROSP to be placed in ambulatory restraints. Carty alleged that two unnamed correctional officers held him while Sgt. Wright conducted a body cavity search upon him. He also alleged that, after being placed in ambulatory restraints, Wright made harassing sexual comments to him and sexually assaulted him by touching his buttocks. In particular, Carty claimed that Wright sexually abused him by "throwing kisses at me, and blinking his eyes at me…." Carty claimed that after being placed in ambulatory restraints a smock was placed on him. Carty stated that when Wright went behind him to secure the smock, Wright touched his buttocks. Carty also stated that Lt. Tate video recorded the entire incident and, therefore, Tate witnessed Wright's actions and failed to intervene to protect him.

Carty alleges that this conduct was "tortious" and violated his rights under the Fourth and Eighth Amendments to the United States Constitution. Carty seeks declaratory relief and compensatory and punitive damages. Carty has sued the defendants in both their official and individual capacities.

Carty also submitted an affidavit in response to the Motion. In this affidavit, Carty stated that in addition to throwing kisses at him and blinking at him, Wright also wiggled his tongue at him on September 21. Carty again stated that the entire incident, including the body cavity search, was recorded on video by Tate. Carty said that he had reviewed the video recording of the incident at issue and that, if

-2-

the court would review the video recording, it "will prove everything plaintiff has sworn to in his §1983 complaint…."

In a May 30, 2012, affidavit, Tate stated that an Incident Report was completed on Carty on September 21, 2011, because Carty splashed an unknown liquid substance through the side of his cell door on to Officer Looney's arm during mealtime at approximately 4:05 p.m. (Att. No. 1 to Motion.) As a result of this conduct, Tate stated that he was called to the housing unit, and he entered the C-3 pod to speak with Carty, who was being housed in cell C-309. Tate said that he ordered Carty to submit to be restrained, and Carty complied with the order. Tate said that Officers Ingle and Dupie restrained Carty.

According to Tate, he ordered that Carty be placed in ambulatory restraints due to his disruptive behavior. Carty was then escorted from his cell to the C-1,2,3 vestibule, his clothes were removed, and he was strip searched. Carty then was placed in ambulatory restraints without incident by Sgt. Wright and Ingle and Dupie. Carty was provided a cloth safety smock to wear. Tate said that he and Wright observed the incident and shared the responsibility of video recording the incident. Tate said that the entire incident was recorded, and the video recording had been submitted to the court as an exhibit to Tate's affidavit. Tate also stated that Nurse Adams assessed Carty after he was placed in ambulatory restraints.

Tate stated that it was standard prison procedure to conduct a strip search of an inmate before placing him in ambulatory restraints for safety and security reasons. According to Tate, during a strip search, the inmate's clothing is removed, and a complete visual search of the body is made. A body cavity search,

-3-

according to Tate, is a search in which "medically trained personnel inspects [sic] the body cavities of an offender in order to detect and recover concealed contraband." Tate stated that no one, including Wright, conducted a body cavity search on Carty on September 21, 2011.

Tate also stated that he was present during the strip search of Carty and that Wright did not make any "sexual advances, sexual assaults, or inappropriate touching towards Carty. I did not observe Sgt. Wright throwing kisses or blinking his eyes at Carty. … Sgt. Wright appropriately performed his job duties in accordance with operating procedures during Carty's strip search and placement in ambulatory restraints on September 21, 2011."

A review of the video evidence does not conclusively support either party's version of the event. The video recording does not show all of Carty's body cavities at all times during the time he was being placed in ambulatory restraints. Also, the video recording does not establish whether Wright touched Carty's buttocks or made any inappropriate gestures. The video evidence also is not one continuous recording, but, rather, the video recording was stopped for some period of time after Carty was placed in ambulatory restraints to resume later. Therefore, the video evidence does not conclusively disprove Carty's claims.

## II. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to

-4-

any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to Carty on the defendant's motion for summary judgment. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

The Fourth Amendment to the United States Constitution protects against "unreasonable searches," and the Eighth Amendment protects against the infliction of "cruel and unusual punishment." U.S. CONST. amend. IV and VIII. The Eighth Amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer,* 468 U.S. 517,

526-27 (1984). To prevail on a failure to protect claim, an inmate must show objectively that he was at risk of serious harm and that the defendant subjectively knew of that risk and acted with deliberate indifference to the risk of harm to the inmate. *See Farmer*, 511 U.S. at 832. Neither of these amendments, however, protects a prison inmate from the indignities of incarceration. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948).

In *Bell v. Wolfish*, 441 U.S. 520, 557-60 (1979), the Supreme Court held that cell "shake down" searches, strip searches and visual inspections of a prisoner's body cavities did not violate the Fourth Amendment, if reasonable under the circumstances. The *Bell* Court adopted a balancing test for determining the reasonableness of sexually intrusive searches. *See,* 441 U.S. at 559. This test "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell* 441 U.S. at 559.

This test, however, is of little import in this case because the dispute is not over whether the body cavity search was justified, but, rather, the dispute is over whether the body cavity search ever occurred. It is important to note that Carty has provided no information to the court regarding what he refers to as a "body cavity search." He has not told the court what body cavity was involved. Nor has he told the court how this search was accomplished. Tate concedes that Carty was strip searched with a visual inspection of his entire body performed. Because Tate

-6-

insists that no body cavity search was performed, he offers no evidence of any circumstances justifying such an invasive search. Under federal law, however, a "body cavity search … includes a visual or physical examination into the body's recesses." *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001) (citing *Bell*, 441 U.S. at 558).

Carty also claims that he was subjected to cruel and unusual punishment based upon Wright's sexual harassment and Tate's failure to protect him. The Second Circuit has held that "sexual abuse of an inmate by a corrections officer may reach constitutional dimensions and give rise to an Eighth Amendment claim under Section 1983." *Boddie v. Schnieder*, 105 F.3d 857, 859 (2nd Cir. 1997). The *Boddie* court reasoned that the severe or repetitive sexual abuse of an inmate could be serious enough to meet the objective requirement. *See* 105 F.3d 861. The court also noted that the sexual abuse of a prisoner by a correctional officer may violate contemporary standards of decency, can cause severe physical and psychological harm and serves no penological purpose. *See Boddie*, 105 F.3d 861. Because the conduct serves no penological purpose, the abuse itself may be sufficient evidence of the required subjective culpable state of mind. *See Boddie,* 105 F.3d 861; *see also Giron v. Corr's Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999)("Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct, including but not limited to sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'")

The evidence before the court presents a dispute in fact as to whether a body cavity search was conducted. The evidence also presents a dispute in fact as to

whether Wright made sexually harassing gestures at Carty and touched his buttocks inappropriately. Tate does not dispute that he was present and witnessed the entire incident. Nor does he argue that there was any reason to conduct a body cavity search on Carty.

Tate argues that he is entitled to qualified immunity on Carty's claims. Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Short v. Smoot*, 436 F.3d 422, 426 (4th Cir. 2006) ("Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"). Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A claim of qualified immunity is evaluated using a three-step analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips J., concurring). Third, the court must determine whether a "reasonable person in the official's

---

[2] In *Pearon v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the sequential inquiry of *Saucier* is often appropriate, but not mandatory. Instead, the Court held that the judges of the district and courts of appeal should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

-8-

position would have known that his conduct would violate that right." *Collinson*, 895 F.2d at 998 (Phillips J., concurring).

If Carty's allegations are true, Tate stood by and watched Wright perform a body cavity search on Carty while Wright made sexually harassing gestures to Carty and inappropriately touched Carty's buttocks. Conducting a body cavity search with no justification would be an unreasonable search in violation of the Fourth Amendment. Furthermore, the Supreme Court ruled in 1979 in *Bell* that such sexually intrusive searches must be justified under the circumstances. Since Tate has offered no evidence of circumstances to show that a body cavity search was justified, Tate should have known that these actions, if taken by Wright, violated Carty's right to be free from unreasonable searches, and Tate should have taken steps to protect Carty. Furthermore, if Tate witnessed Wright make sexually harassing gestures to Carty and inappropriately touch Carty's buttocks, Tate, in essence, witnessed a sexual assault and battery. Based on the *Boddie* and *Giron* cases cited above, Tate should have known that such actions violated Carty's Eighth Amendment right to be free from cruel and unusual punishment. Therefore, I find summary judgment based on qualified immunity inappropriate at this time.

Because state officials acting in their official capacities are not "persons" for purposes of § 1983, I do recommend that the court enter summary judgment in Tate's favor on Carty's claims against Tate acting in his "official capacity."

-9-

# PROPOSED FINDINGS OF FACTS AND
# CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  There is no genuine dispute of material fact, and summary judgment should be entered in Tate's favor on Carty's claims based upon Tate acting in his "official capacity;"

2.  There is a genuine dispute of material facts which prevents the entry of summary judgment in Tate's favor on Carty's remaining claims; and

3.  There is a genuine dispute of material facts which prevents the entry of summary judgment in Tate's favor on Carty's remaining claims based on a claim of qualified immunity.

# RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion only insofar as it should enter summary judgment in Tate's favor on Carty's claims that Tate was acting in his "official capacity." Otherwise, the court should deny the Motion.

-10-

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 21st day of September, 2012.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE

-11-